**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| KATHLEEN R. HERROLD, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-68-PRC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Kathleen R. Herrold on February 13, 2017, and on an Opening Brief [DE 18], filed by Plaintiff on September 11, 2017. Plaintiff requests that the January 29, 2016 decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed and remanded for further proceedings or for an award of benefits. On November 20, 2017, the Commissioner filed a response. Plaintiff filed a reply brief on December 6, 2017. For the following reasons, the Court grants Plaintiff's request for remand for further administrative proceedings.

**PROCEDURAL BACKGROUND**

On October 8, 2010, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on January 28, 2010. Plaintiff's application was denied initially and upon reconsideration. A hearing was held on May 10, 2012, before Administrative Law Judge ("ALJ") Jonathan Stanley, and on May 17, 2012, ALJ Stanley issued a decision denying the application. Plaintiff sought review of the ALJ's decision, but the Appeals Council denied the request. Plaintiff sought judicial review, and, on March 17, 2015, Magistrate Judge John E. Martin, presiding by

consent of the parties, granted Plaintiff's request to remand the matter to the agency for further proceedings.

On remand, the Appeals Council remanded the matter to an ALJ for a hearing and new decision. ALJ Romona Scales held a hearing on December 1, 2015. She issued a written decision on February 3, 2016, denying benefits and making the following findings:

> 1.  The claimant last met the insured status requirements of the Social Security Act on June 30, 2012.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 28, 2010 through her date last insured of June 30, 2012.
>
> 3.  Through the date last insured, the claimant had the following severe impairments: arachnoid cyst; rheumatoid arthritis; degenerative disc disease of the cervical and lumbar spine; fibromyalgia; hypertension; obesity; depressive disorder; and anxiety disorder.
>
> 4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), as the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; and sit, stand or walk for 6 hours each in an 8-hour workday. The claimant could never climb ladders, ropes or scaffolds but could occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant could frequently handle, finger, and reach bilaterally. The claimant had to avoid exposure to hazards, including unprotected heights; moving machinery; and slippery, uneven surfaces. The claimant could have occasional exposure to extreme cold. The claimant could understand, remember, and carry[ ]out unskilled tasks or instructions; maintain adequate attention and concentration for such tasks or ongoing [*sic*]; and manage the changes in a routine, unskilled work setting. The claimant required no fast-paced production work or quotas. The claimant could have had ongoing, superficial interaction with the general public.
>
> 6.  Through the date last insured, the claimant was unable to perform any past relevant work.

    7.      The claimant was born [in 1963] and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured.

    8.      The claimant has at least a high school education and is able to communicate in English.

    9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

    10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

    11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from January 28, 2010, the alleged onset date, through June 30, 2012, the date last insured.

(AR 423-34).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous

legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful

review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically

5

considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that this matter must be remanded for further proceedings because the ALJ erred in evaluating Plaintiff's hand and wrist abilities and headaches and in assigning weight to opinion evidence.

### A. Evaluation of Hands, Wrists, and Headaches

The residual functional capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four

6

and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

The ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;

7

(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").[1]

Plaintiff asserts that the ALJ erred in determining her RFC because the ALJ did not properly take into account restrictions due to Plaintiff's hand and wrist complaints and due to Plaintiff's headaches.

---

[1] On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). However, SSR 16-3p is not retroactive; therefore, the "credibility determination" in the ALJ's decision in this case is governed by the standard of SSR 96-7p. *See* Notices, Social Security Ruling 16-3p, 2017 WL 4790249 (Oct. 25, 2017) (clarifying that Social Security Ruling 16-3p only applies when ALJs "make determinations and decisions on or after March 28, 2016" and that Social Security Ruling 96-7p governs cases decided before that date).

*1.  Hand and Wrist Complaints*

In his opinion remanding the prior ALJ decision in this matter, Magistrate Judge Martin directed the ALJ to address Plaintiff's daily activities in accordance with the controlling regulations. (AR 500). Magistrate Judge Martin was "concerned by how significantly [the ALJ] relied on [Plaintiff's] daily activities to discount Plaintiff's reports of pain and other limitations" and cited precedential case law of the Seventh Circuit Court of Appeals criticizing the equating of performance of daily activities to the ability to perform full-time, competitive work. (AR 496 (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Zurawski*, 245 F.3d at 887)).

Despite Magistrate Judge Martin's directive, the ALJ has again relied substantially on Plaintiff's daily activities to find her hand and wrist complaints to be not as restrictive as alleged. Plaintiff's rheumatologist found that Plaintiff could perform manipulative activities only 30% of a workday. (AR 314). The ALJ found instead that Plaintiff could handle and finger "frequently." Activity performed frequently has an upper limit of 2/3 of the work day, that is, up to 5 hours and 40 minutes in an 8 hour work day. SSR 83-10, 1983 WL 31251, at *6 (1983).

In support of her determination, the ALJ cited evidence of decreased grip strength of 4/5 and Plaintiff's statements that "she performed some of the lighter household chores, such as folding laundry and washing dishes, which required the use of her hands." (AR 431 (citing AR 190-98, 225-33)). Plaintiff's statements in the record cited by the ALJ show significant limits to Plaintiff's performance of daily activities. Plaintiff never states that she can wash dishes; instead, she indicates that she can load and unload the dishwasher. (AR 192, 227). Plaintiff describes her pace as slow and states that chores "can take hours." (AR 192). She can fold laundry and do light housekeeping for

9

"2-3 hours max." (AR 227). Plaintiff also indicates that after only 15 to 30 minutes of using the computer her hands swell. (AR 194). She also indicates that "I start things and don't finish - I understand after a few time[s] of being told - my hands hurt and I can do work for short times." (AR 195).

The ALJ has not provided a logical bridge from Plaintiff's statements of performing light housework slowly for a maximum of 3 hours to the ALJ's finding that Plaintiff can handle and finger for 5 hours and 40 minutes in an 8 hour workday. Further, though the decreased grip strength may be an indicator of the ability to handle and finger, Plaintiff has alleged other issues, such as swelling and pain, that could also keep her from being able to handle and finger for more than 30% of the workday despite her grip strength.

Defendant responds that the ALJ cited evidence and explained that Plaintiff's rheumatoid arthritis caused pain, decreased strength, and swelling that warranted manipulative and hazard restrictions. Though Defendant acknowledges that the ALJ used Plaintiff's daily activities to support her decision, Defendant does not acknowledge Plaintiff's argument that this treatment of daily activities runs counter to precedential case law and the direction given by Magistrate Judge Martin.

This decision, like its predecessor, is flawed for its treatment of Plaintiff's daily activities in assessing her ability to perform full-time, competitive work, and the ALJ has not provided a logical bridge from the evidence cited to the ALJ's conclusion that Plaintiff can handle and finger frequently. Remand of this case is necessary.

2. *Headaches*

The ALJ found that Plaintiff had only hazard restrictions in her RFC due to her headaches. The ALJ noted that, at the 2015 hearing, Plaintiff testified to daily headaches that required her to

10

lie down in a dark room. (AR 429). Plaintiff's testimony was that she would have daily headaches that, at least twice a week, would require her to lie down in a dark room for eight hours. (AR 774-75). The ALJ characterized the allegation of being "constant, daily headaches." (AR 430). In support of finding Plaintiff's headaches not as severe as alleged, the ALJ cites to a medical examination which notes that Plaintiff "sometimes [has] headaches," (AR 265), which the ALJ restates as having "only occasional headaches," (AR 429). The ALJ further states that Plaintiff "denied to Dr. Siddiqui in November 2010 and July 2011 that she had any headaches," (AR 429), but those records instead show that, at the time of an examination on two specific dates, Plaintiff was not currently experiencing a headache, (AR 352, 359). That is, Plaintiff did not state that she was headache free for the entirety of those months, as implied by the ALJ.

Finally, the ALJ noted complaints of headaches made to Dr. Maniar in December 2011 and to Dr. Siddiqui in April 2012, but the ALJ qualified these complaints by noting that both doctors found her to have high blood pressure. (AR 429). Dr. Maniar's report does not connect the headaches to the high blood pressure. He lists Plaintiff's complaints of headaches under the section discussing Plaintiff's arachnoid cyst and addresses Plaintiff's high blood pressure under a separate section with its own heading. (AR 320). Dr. Siddiqui's handwritten report is only partially legible. (AR 339). The Court does not see any indication in the legible portions of that report that Dr. Siddiqui found a causal connection between Plaintiff's blood pressure and her headaches.

In response, Defendant summarizes the ALJ's opinion and repeats the ALJ's stated rationale for finding that a limitation for hazards accommodates Plaintiff's headaches. Defendant does not, however, address Plaintiff's arguments that the opinion wrongly connected the headaches to high blood pressure and misstated Plaintiff's complaints of the frequency of headaches.

11

The ALJ has mischaracterized the record regarding Plaintiff's complaints of headaches. She has overstated some complaints, such as increasing "daily headaches" to "constant, daily headaches," and she has understated others, such as implying that the lack of a headache at one examination was a statement that Plaintiff had a headache-free month and changing a complaint of "sometimes" having headaches to having "only occasional headaches." The ALJ also connected Plaintiff's headaches to high blood pressure without citing to medical support in the record for this connection. The ALJ has not created a logical bridge in her discussion of Plaintiff's headaches to her conclusion that they are accommodated by hazards restrictions alone. The ALJ is directed to correct this error on remand.

**B. Opinion Evidence**

*1.    Non-Medical Opinion Evidence*

The regulations provide that an ALJ may consider information from "non-medical sources," which can include a claimant's friends and family. *See* 20 C.F.R. § 404.1513(d)(4); *see also* SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (listing "other sources" as defined in § 404.1513(d) as including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers"). Social Security Ruling 06-3p clarifies how opinions from sources that are non-medical sources are considered. *See* SSR 06-3p, at *1. In considering statements from non-medical sources, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*.

> The following is the ALJ's entire analysis of the non-medical opinions.
>
> The undersigned took into consideration the statements of the claimant's daughter, mother, and husband indicating that she did some of the lighter chores. They stated that the claimant could follow instructions and did not have any issues interacting with others. The undersigned gives them some weight, as they are generally consistent with the record. In particular, the statements are consistent with the claimant's own Function Reports. They are consistent as well with the findings of the consultative psychological examination.

(AR 432 (citations omitted)). The ALJ cherry-picked the portions of the opinions most favorable to the ALJ's decision and failed to mention the rest. For example, the ALJ did not mention that Plaintiff's mother and husband both indicated that Plaintiff at times has difficulty getting out of bed and dressing herself, (AR 200, 208), and that it takes her a while to complete tasks (AR 201, 212). Plaintiff's husband's remarks support Plaintiff's allegations of pain and difficulty in using her hands. (AR 214).

Due to the lack of analysis, the Court is unable to determine whether the ALJ considered these statements and to follow the ALJ's reasoning that led to her opinion that Plaintiff retained the RFC as found by the ALJ. The ALJ stated that the opinions are "generally consistent with the record" but it is unclear how a person with the limitations described in the third party function reports would have the RFC found by the ALJ. It was error for the ALJ to not provide more analysis and discussion of the specific opinions within the reports, as there is no logical bridge from the specific opinions identified above—which were given "some weight"—and the RFC.

2. *Medical Opinion Evidence*

In determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . received." 20 C.F.R. § 404.1527(b). And, the ALJ evaluates every medical opinion received. 20 C.F.R. § 405.1527(c).

13

This includes the opinions of nonexamining sources such as state agency medical and psychological consultants as well as outside medical experts consulted by the ALJ. 20 C.F.R. § 405.1527(e)(2).

An ALJ must give the opinion of a treating doctor controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). In weighing all opinion evidence, the ALJ considers several factors and "must explain in the decision the weight given" to each opinion. 20 C.F.R. § 404.1527(e)(2)(ii), (iii); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). When a treating physician's opinion is not given controlling weight, the ALJ must nevertheless consider certain factors to determine how much weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability (such as medical signs and laboratory findings), and specialization. 20 C.F.R. § 404.1527(c)(2)-(5).

Plaintiff presents many arguments for finding error in the ALJ's weighing of her treating physician's opinions. Because the Court has already determined that this case must be remanded, the Court declines to fully address each argument and instead provides the following guidance.

An opinion that a person can "stand and walk" for four hours in a work day and can "sit" for four hours in a work day is not equivalent to an opinion that a person can "sit, stand or walk for 8 hours," (AR 431), especially when the physician providing the opinion indicates on the same opinion form that the person *requires* rest for more than 2 hours in a work day, (AR 337).

Further, decrease of symptoms or improvement with medication does not mean that a person is not disabled. It is possible for disabling symptoms to improve or decrease to a less severe but still disabling level.

### C. Request for Award of Benefits

Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for additional proceedings. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is required.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in the Opening Brief [DE 18], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 14th day of June, 2018.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT